IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-04036-01-CR-C-FJG |
| | ) | |
| CLARENCE DEAN BURWELL, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Clarence Dean Burwell (hereinafter "defendant") filed a motion to suppress on January 28, 2014. [Doc. no. 40]. The Government responded in opposition [doc. no. 45], and defendant filed reply suggestions in support of his motion [doc. no. 46]. On March 13, 2014, a hearing was held on defendant's motion.[1] Defendant appeared in person and by counsel Cody Edwards, and the Government appeared by Assistant United States Attorney Larry Miller.

In support of suppression of the evidence in this case, defendant's original motion makes several generalized arguments, however, at the hearing and in his reply suggestions in support, the defendant focuses on the lack of probable cause to stop his vehicle and subsequently arrest him. In opposition to the motion, the Government asserts that based on the totality of circumstances law enforcement had reasonable suspicion to stop defendant's vehicle and subsequently probable cause to arrest the defendant.

## Discussion

### Facts

On November 25, 2012, Miller County Detective Kip Bartlett (hereinafter "Det. Bartlett") applied for a search warrant for an apartment in Lake Ozark, Miller County, Missouri, after receiving information from a confidential informant ("CI") that "TR" was selling large amounts of methamphetamine from the apartment and at her place of work, the Silver Saddle Bar in Eldon, Missouri.

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

At approximately 8:00 p.m. on November 26, 2012, Det. Bartlett, DEA, Detective. Lt. J.D. Williams, Detective Kevin Schoenfield, Deputy Leslie Fischer and Detective John Loveless went to the apartment and knocked. TR opened the door and was advised by Det. Bartlett that they had a search warrant for the apartment. Det. Bartlett read TR her *Miranda* rights and she advised she understood. Det. Bartlett asked TR where the methamphetamine was and she stated, "My purse." When asked if there was anything else illegal in the apartment, TR said, "just what was in the pipe, the pipe Forrest had." In TR's purse Det. Bartlett found a Crown Royal bag containing three bags of crystal powder which field-tested positive for methamphetamine (approximately 60 grams of methamphetamine). There was also a black zipper case which contained four baggies of crystal powder, a straw and a Q-tip.

Detective Lt. Williams (hereinafter "Det. Williams") interviewed TR at the Miller County Jail. TR stated that she had moved to the Lake of the Ozarks area in 2000 from Illinois, and that she had lived at the apartment for approximately one month. TR said she had a previous conviction for distribution of marijuana in 2004 and had received 5 years probation. TR said she last picked up 2 ounces of methamphetamine from her supplier (the defendant) approximately 3 weeks earlier. TR indicated that she picked up methamphetamine approximately every six weeks, from 1-4 ounces, and had since the spring of 2012, and that she paid $2,200 per ounce. TR said she sold methamphetamine in the past, but had stopped for about a year. TR said she was fronted the methamphetamine from her current suppliers. TR said that she had gone to Springfield on November 26, 2012, to pick up a car from "Dean" (the defendant), and that she met the defendant and Laura (Laura Lea Prewett) at the American Best Value Hotel in Springfield. (Directions to room 310 at the American Best Value in Springfield were found in TR's purse.) TR admitted to sending money orders to "Laura." TR said she contacted Prewett (Laura Lea Prewett is hereinafter "Prewett") to set up the methamphetamine deals, and that she currently owed $4,400. TR said she sold the methamphetamine by the eight ball for $325.00. TR said that the defendant and Prewett lived in Quapaw, Oklahoma.

On November 27, 2012, Det. Williams interviewed TR again, and she identified the defendant and Prewett from Missouri Department of Revenue photographs and agreed to cooperate with the investigation.

On November 29, 2012, Det. Bartlett and Det. Williams met with TR at her residence. The first recorded phone call was placed to the defendant, on this date. It was defendant who

answered the call and TR arranged to have not less than 2 ounces of methamphetamine delivered to her by the defendant and Prewett. During this call, the defendant spelled out his last name, "B U R W E L L," for TR.

On November 30, 2012, while Det. Bartlett and Det. Williams were present, TR made another phone call to the defendant. During their unrecorded conversation (due to the recorder's dead battery), the defendant stated that he would try to come up that afternoon from Springfield but did not know a time.

At approximately 2:30 p.m. on December 1, 2012, Det. Bartlett and Det. Williams met with TR at her residence. A third phone call (unrecorded due again to the dead battery in the recorder) was made to the defendant, who stated he was in Springfield and would be in the Lake area that evening. The defendant said he would call TR when he was close and arrange a place to meet. TR told Det. Bartlett and Det. Williams that Prewett would bring the methamphetamine to her apartment because the defendant's medical condition would not allow him to climb stairs. TR said the methamphetamine would be transported either on the defendant or in a small, six-pack cooler. TR also advised that the defendant and Prewett would be driving a purple truck.

Surveillance was set up at approximately 8:00 pm. At approximately 11:55 p.m., officers observed a purple Dodge truck bearing Missouri registration 8DG469 travel across Highway 54 and onto Osage Hills Road. Det. Bartlett recognized the couple in the truck as matching the description provided for the defendant and Prewett. The license plate number on the truck was ran through MULES, and showed the truck to be registered to the defendant Clarence Dean Burwell. Based on the information collected, Det. Bartlett executed a traffic stop of the truck, and identified the driver as the defendant and the passenger as Prewett. During the course of the traffic stop, the defendant and Prewett gave consent to search their persons and the vehicle. The defendant had $2,746.00 in U.S. currency in his jacket pocket.

The defendant and Prewett gave inconsistent stories as to why they were in the Lake of the Ozarks area and what the money was for. Defendant stated to Det. Bartlett that he had the money to buy a car, while shortly thereafter, defendant told Det. Williams he had just sold a vehicle. A red Coleman cooler, consistent with TR's description of the cooler, was found in the bed of the truck. There was visible yellow insulation present on the outside of the cooler.

The officers believed the methamphetamine was located within the cooler as directed by TR. A drug dog was utilized at the scene, but the dog did not want to work. The dog was

interested in the officers at the scene and not in conducting a search. Accordingly, the drug dog did not conduct a search of the cooler or of defendant's vehicle.

The defendant and Prewett were arrested for drug trafficking based on the totality of the circumstances. Defendant and Prewett were transported to the Miller County Sheriff's Department and the defendant's truck was impounded. The cooler was disassembled at the Sheriff's Department. The cooler had a hollowed-out bottom, in which a cellophane package was discovered. Within the package were white crystals, which field-tested positive for methamphetamine and weighed approximately 56 grams.

Prewett invoked her *Miranda* rights at the scene of the traffic stop, but did yell to officers while at the jail that the methamphetamine was hers. The defendant was advised of his *Miranda* rights and agreed to speak with DEA Special Agent Steve Mattas. The defendant admitted the methamphetamine located in the cooler was his, but was evasive as to his supplier and where he was traveling. Items seized from the defendant's vehicle included an Express Mail receipt dated April 25, 2012, from TR to the defendant at an address in Quapaw, Oklahoma.

The methamphetamine seized from TR's residence on November 27, 2012, and from the cooler in the defendant's truck, were sent to the DEA Lab. The Lab determined that the white crystal substance seized on November 27, 2012, was methamphetamine with a net weight of 60.0 grams with 53.6% purity, and that the contents of the bag from the cooler was methamphetamine with a net weight of 55.0 grams with 58.3% purity.

**Reasonable Suspicion to Stop Defendant's Vehicle**

The Fourth Amendment permits law enforcement officers to make an investigatory stop if they have a reasonable and articulable suspicion that there is criminal activity afoot. Terry v. Ohio, 392 U.S. 1, 25-31 (1968). A "[r]easonable suspicion is a particularized and objective basis for suspecting the person stopped of criminal activity." United States v. Thomas, 249 F.3d 725, 729 (8th Cir. 2001). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." United States v. Halls, 40 F.3d 275, 276 (8th Cir. 1994).

In this case, at minimum, the officers had reasonable suspicion to stop defendant's vehicle based on the totality of the circumstances. The officers had very specific, objective articulable facts supporting their suspicion that defendant and Prewett were involved in illegal

distribution of methamphetamine.  Before the officers stopped defendant's truck they already had substantial information that defendant was involved in illegal drug sales.

At the time the officers stopped defendant's truck, officers believed defendant was in the area for purposes of completing a drug deal.  A drug deal that the officers had already been monitoring via telephone conversations that an informant, TR, was having with the defendant.  TR had identified defendant as her supplier and was cooperating with law enforcement.  With the assistance of TR, the officers had specific information that defendant would be arriving in the area of her residence on the evening of December 1, 2012, to sell her additional methamphetamine.

In the police-monitored telephone conversations, in which TR set up the drug deal with the defendant, defendant gave specific information as to the drug deal and also specifically identified himself.  Defendant spelled his last name for TR during one conversation since she only knew him as "Dean."  The phone conversations identified when and where the drug deal would occur.  TR further described the purple truck defendant would be driving, and provided a description of defendant and his passenger Prewett who she said would also be in the vehicle.  TR went on to advise the location of the methamphetamine, identifying that the methamphetamine would be either on defendant or in a small six-pack cooler.

It was with this information, that the officers set up surveillance and viewed the purple truck with the defendant and Prewett inside, as described by TR.  The license plate on the vehicle checked to the defendant.  With this background of information in hand, the officers stopped defendant's vehicle as it came into the area of TR's residence.  Certainly at this point, the officers were acting on more than a mere hunch; the officers had sufficient information to support a particularized objective basis for suspecting defendant and Prewett of criminal activity.  The stop of defendant's vehicle did not violate his Fourth Amendment rights.  See e.g. Navarette v. California, 134 S.Ct. 1683, 1687-88 (2014) (under appropriate circumstances, an anonymous tip can demonstrative sufficient indicia of reliability to provide reasonable suspicious to make an investigatory stop).  See also Alabama v. White, 496 U.S. 325, 331-332 (1990) (corroboration of details such as description of a brown Plymouth station wagon with broken right tail light, made anonymous tip sufficiently reliable to create reasonable suspicion to stop vehicle that tipster reported was transporting cocaine).

**Probable Cause to Arrest**

To justify a warrantless arrest, probable cause must exist. United States v. Adams, 346 F.3d 1165, 1169 (8th Cir. 2003). Probable cause is determined from "the totality of the circumstances as set forth in the information available to the arresting officers at the time of the arrest." Id. A warrantless arrest complies with the Fourth Amendment "when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." Id. at 1169.

Here, the totality of circumstances supporting probable cause to arrest the defendant included the information the officers had prior to stopping defendant's vehicle and additional information obtained during the stop of defendant's vehicle. The additional information obtained during the stop, supported and corroborated the prior information and suspicions that defendant and Prewett were involved in illegal drug distribution.

During the valid traffic stop of defendant's vehicle the officers found more than $2,000.00 cash on defendant's person. This cash was located during a search of defendant's person, with his consent. Both defendant and Prewett consented to the search of their person and the purple truck they were driving.[2] When asked about the cash and their reason for being in the area, the explanations of defendant and Prewett were inconsistent. Defendant told one officer that the money was to buy a vehicle and told the other officer the cash was from selling a vehicle. In addition, the officers observed in defendant's vehicle a small red cooler, with the insulation sticking out, consistent with the description provided by TR. TR had described this cooler as the location where the methamphetamine for the drug deal would be located if it was not on defendant's person (pursuant to the consent of defendant and Prewett, a search of their persons was conducted and no methamphetamine was found). These additional facts not only added to the information the officers had, but more importantly corroborated the information the officers already had from the police-monitored telephone conversations and the information

---

[2] There is no challenge to the consent to search given by the defendant. Moreover, the evidence shows the consent was voluntary. It is well settled that Government officials may conduct a search without a warrant or probable cause based on an individual's consent so long as it was voluntary and came from someone authorized to grant consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). See also United States v. Guzman, 507 F.3d 681, 687 (8th Cir. 2007).

6

provided by TR, supporting that defendant and Prewett were in the process of conducting an illegal drug deal.

There was also additional and corroborating information obtained in the initial process of stopping defendant's vehicle that supported the suspicions and reasonable belief of the officers that defendant and Prewett were conducting the illegal drug deal they had arranged with TR. The defendant's vehicle was stopped when officers observed defendant and Prewett traveling near the location identified by TR and in the telephone calls as the place where the drug deal would occur. Defendant was in the purple vehicle as described by TR, and TR correctly described defendant and Prewett's appearances. When the license plate on the purple truck was checked by law enforcement, it was registered to the defendant, who had specifically identified himself in the telephone calls arranging the drug deal with TR.

When all the information known to officers at the time of defendant's arrest is considered, the Court finds that the officers had probable cause to believe that defendant and Prewett were committing the crime of illegal drug distribution. See Id. at 1170 ("police are not required to have enough evidence to justify a conviction before they make a warrantless arrest. We must give law enforcement officers substantial latitude in interpreting and drawing inferences from the factual circumstances …."). A person of reasonable caution would certainly believe that defendant and Prewett were in the area to complete the illegal drug deal they had previously set up with TR in the police-monitored telephone conversations. Moreover, a reasonable person would believe that the methamphetamine defendant and Prewett were going to sell to TR was in the red cooler found in their vehicle. Accordingly, the officers had probable cause to arrest the defendant and Prewett for distribution of methamphetamine.

**Search/Seizure of the Cooler**

For the reasons set forth above, the officers had probable cause at the scene of the traffic stop to believe that the cooler in defendant's vehicle had methamphetamine concealed within it. Out of concern for the ability to contain the methamphetamine on the side of the roadway, the officers decided that the search of the cooler should be conducted at the Sheriff's Department. This transportation of the cooler to the department does not change the fact that there was probable cause to search the cooler. Moreover, the search of the cooler is supported on two additional basis: (1) consent; defendant and Prewett had consented to the search of their vehicle and this cooler was in the vehicle; and (2) search incident to arrest; the cooler was seized from

7

defendant's vehicle and searched subsequent to his arrest. See Arizona v. Grant, 556 U.S. 332, 343 (2009) (a vehicle may be searched incident to a lawful arrest when it is "reasonable to believe evidence relevant to the criminal of arrest might be found in the vehicle."). The search of the cooler did not violate defendant's rights.

**Seizure of the U.S. currency**

The $2,000 plus in U.S. currency was properly seized pursuant to the valid search of defendant's pocket, and defendant's subsequent arrest supported by probable cause (as set forth above).

**Conclusion**

For the foregoing reasons, this Court finds that defendant's rights were not violated. Defendant's motion to suppress evidence, including the 56 grams of methamphetamine found in the red cooler that was found in his vehicle, and $2,746.00 in cash, should be denied.

IT IS, THEREFORE, RECOMMENDED that defendant Clarence Dean Burwell's motion to suppress be denied. [40]

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. Failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 30th day of May, 2014, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge